CRAWFORD et al. v. EIDMAN, Internal Revenue Collector.

(Circuit Court, S. D. New York. April 8, 1902.)

No. 3,919.

1. DAMAGES—COSTS IN FORMER PROCEEDINGS.

A suit for the possession of certain real estate had been discontinued by a government officer, who had previously seized the property for violation of law, but who, without right, continued in possession after the discontinuance. *Held*, in an action for damages for thus wrongfully retaining possession, that the amount of costs in the former proceeding, incurred by the plaintiff in the latter case, formed no part of the damages which were recoverable.

2. PUBLIC OFFICERS—LIABILITY—WRONGFUL POSSESSION OF PRIVATE PROPERTY —DAMAGES.

Where a government officer, who has seized property used for illicit purposes, retains possession of it without color of process after his right to such possession has ceased, he is liable to the owners of the property for the damages suffered by them through such wrongful possession, even though he acted in good faith.

3. SAME—EXEMPLARY DAMAGES—WANTON DISREGARD OF PRIVATE RIGHTS.

Where a government officer injures a citizen by any official act, he is, in addition to his liability for actual damages, subject to exemplary or punitive damages, if he proceeds in malicious or wanton disregard of the citizen's rights.

At Law. Action for damages.

This action was brought by John G. Crawford and another against Ferdinand Eidman, Collector of Internal Revenue for the Third district of New York. The plaintiffs had purchased at a foreclosure sale a piece of property on which they held a purchase-money mortgage, and which had been seized previously by the defendant on discovering an illicit still on the premises. The defendant removed the still and its appurtenances, without disturbing an engine and boiler which had been placed in the building in order to furnish steam power for factory purposes; and, though the plaintiffs were entitled to possession under the judgment of foreclosure, the defendant continued to retain possession of the building, with internal revenue locks on the doors, on the ground that he might want to sell the engine and boiler as being connected with the illicit still. The plaintiffs made numerous attempts to induce him to surrender the building in its condition at that time, or to remove the engine and boiler and give up the building, or to sell the engine and boiler there and then surrender the building; but he would do nothing. The plaintiffs finally obtained an order from the Commissioner of Internal Revenue, directing the defendant to release the property to them, which order was not obeyed for more than two weeks after its receipt.

On the ground that the defendant had unlawfully prevented them from having the possession and use of their property, the plaintiffs brought this action.

Jacob Fromme and Isaac Fromme, for plaintiffs.

Charles D. Baker and Arthur M. King, Asst. U. S. Attys., for defendant.

WALLACE, Circuit Judge (charging jury). You already understand that this action is brought by the plaintiffs to recover damages for being kept from the possession of their premises, 324 West Twenty-

¶ 2. Torts of public officers, see note to Mayor, etc., of City of New York v. Workman, 14 C. C. A. 534.

Sixth street, during the time that intervened after they acquired right to the possession on the foreclosure sale, and until it was surrendered to them on the 30th day of August, following.

Now, it seems that the plaintiffs acquired title under the foreclosure sale on June 30th. Until that time they had no right to the possession of the premises. It seems that, shortly before, three weeks before, the government, having information that an illegal distillery was being carried on, entered the premises and made a seizure of the personal property found there. The plaintiffs had nothing to do with conducting the illegal distillery. They were entirely innocent. On the other hand, the defendant, representing the government, was perfectly justified in visiting the premises and in removing therefrom all the guilty property; that is to say, all the property which was being used in the conduct of this illicit business. The property was removed in April, the 11th day of April, except an engine and boiler. Now, it is conceded that this engine and boiler were a part of the real estate, that a suit had been commenced by the government to forfeit the real estate, and that, if that suit had proceeded to a decree, the boiler and engine would have been forfeited, as well as the land and building. It appears, also, that the plaintiffs, holding a mortgage upon the property, this being before the foreclosure sale had been consummated, intervened in that suit; and the government, doubtless being advised that they were entirely innocent, permitted its suit to be discontinued.

Now, it is said that the plaintiffs were compelled to pay the costs on the discontinuance of that suit. Very likely they were; but that is a matter with which this defendant has no concern whatever. In all probability, if the defendant had not been kindly disposed toward the plaintiffs, that suit might have been protracted for months, and would not have terminated until there had been a final decree; and in the meantime the property would have been in the possession of the government. But the government officers seemed to recognize that it was just that the suit should be discontinued, and it was discontinued on the 22d day of June. That was the end of that controversy, and the matter of the costs is of no relevancy.

Now, as I have said, on the 30th day of June the plaintiffs acquired a right to the possession of the property. On the 2d day of July, according to the testimony of one of the plaintiffs, he called upon the defendant to be allowed to take possession of the property that had been seized. It seems that, when the officers seized the personal property there, they put padlocks upon the basement door. The boiler and engine were situated in that basement. The basement, according to some of the testimony in the case, was the most desirable part of the building; and, as the building was designed for renting for factory purposes, the use of the machinery, including the engine and boiler, was important. They were located in the basement, and therefore it was that the plaintiffs, anxious to have possession of their property, and anxious to get a tenant into it, made application to the defendant to have the lock removed from the door, so they could have possession.

Here is where the trouble begins, because up to this time there was nothing of which any fair-minded man could reasonably complain. The situation of affairs at that time was this: The boiler and engine was

129 F.—63

real estate, or it was not. If it was real estate, it was abandoned when the government abandoned and discontinued its suit for the condemnation of the real estate. If it was not real estate, it was personal property, and it was property which the government was entitled to seize; and then it was the duty of this defendant, and the officers of the government acting under him, within a reasonable time, to remove it from the premises, or, if they chose to keep it there, to keep it there without detriment to the premises. They did not do it. Negotiations ensued. The plaintiffs' lawyers, and the plaintiffs' lawyers' clerks, and the plaintiffs themselves, visited the internal revenue officers, and various interviews took place; and it seems that communications were passing to some extent between the defendant and the Commissioner of Internal Revenue at Washington. The result was that for two months, practically, from July 2d until August 30th, the plaintiffs were kept out of the possession of their property. The defendant may have acted in the best of good faith in doing this; but he must pay for it, if he did it without right. The government of the United States—and you can treat him as the government in this case—has no right to take possession of the real estate of an individual and preclude him from enjoying it, unless it does so under color of process which entitles it to be held by the government. There is nothing of the kind in this case. If the Commissioner of Internal Revenue himself, or the Secretary of the Treasury, assumed to do this without right, the plaintiffs are entitled to compensation; and the person who for the time being represented the government must pay for it. If he has acted honestly in the discharge of his duties, the law authorizes the court to give him a certificate of probable cause; and then the consequences do not fall upon him personally, but the recovery is paid by the government of the United States.

Now, this is about all there is of this case. From July 2d until August 30th the plaintiffs were kept, without right, from the enjoyment of their property; and the question for you to determine is, what verdict are they entitled to? What will compensate them for the loss they have sustained? Well, in the first place, they are entitled, without doubt, to recover the rental value of the premises during the time they were kept out of possession. They were not kept out of possession from the 30th of August until the 1st day of March, 1900; and I do not know of any rule upon which they can recover damages for being kept out of possession during that time. They did not rent the property. They did not rent it the next spring. I do not know why the government was at fault for that. That was the plaintiffs' misfortune. Undoubtedly, if they had had the property in May, they could have rented it more readily than they could in June, or than they could in August, when they got possession. But they did not get title until the 30th of June—the 1st of July, practically. The best season of the year for renting had already gone by. Now, they were kept out of occupation for about two months. The premises remained vacant a year and a half, or more than that. The plaintiffs are entitled to a verdict for the loss of occupation of the premises during the time they were deprived of possession by the government. They are not entitled to any damages upon the theory that they lost an opportunity of renting the premises.

Now, how much was the rental value of the premises during the time they were kept out of possession? The witnesses put it from $2,100 to $2,400 a year; and it seems that, when the plaintiffs did rent it, they rented it for $1,800.

Now, upon all this testimony, you are to determine what was the fair annual rental value of these premises, and allow them for the two months, practically two months, they were deprived of the use of the premises at that value.

Now, there is another issue. This was a wrongful act on the part of the defendant. I do not mean to say that it was an intentionally wrongful act, by any means; but it was an invasion of the rights of these plaintiffs, because, when they demanded possession of the property, it was the duty of the defendant to see to it that they had possession. But it is said here that there were circumstances of oppression, circumstances of wanton disregard of the rights of these plaintiffs by the defendant; and if you find that to be so, then the plaintiffs are entitled to what the law terms "exemplary damages." That is to say, it is in your discretion to award a sum of money as punishment to the defendant for his wanton disregard of the rights of the plaintiffs. And it is for you to say, if you come to the conclusion that the case is one for punitive damages, how much should be allowed to the plaintiffs on that account. But is there anything in the case which leads you to believe that there was any intention or purpose on the part of this defendant to wrong the plaintiffs? There is no doubt that there was some dilatoriness. There was enough dilatoriness to deserve condemnation. No Collector of Internal Revenue, and no other officer of the government, has the right to sit back in his chair, when he has taken possession of a citizen's property, and compel the citizen to run to him for six weeks or two months to find out what is going to be done. He is paid for the discharge of his duties to the citizen, as well as to the government; and it is his business to be active and alert, and to see that the citizens who fall under his jurisdiction are protected in their rights as far as they can be without jeopardy to the government; and it does not do for one officer to turn a citizen over to another, and for another to turn him over to another.

Now, it was entirely natural that the defendant in this case, not being learned in the law, should desire instruction as to his duties and his rights. He applied to the Commissioner of Internal Revenue. The Commissioner of Internal Revenue—I do not know whether he is a lawyer or not—could not decide this grave question without referring it to the Attorney of the United States for the Southern District of New York; and it seems to have taken that learned official several weeks or less to make up his mind, and in the meantime the plaintiffs were kept outside their premises and on the sidewalk.

Now, the question is whether the defendant acted in good faith; that is all. There is some delay which seems to be quite unexplained. On the 13th of August he got instructions from the Commissioner of Internal Revenue to release this property and surrender possession. Suppose he got the letter on the 15th of August; there were about two weeks in which he did nothing, waiting until he got ready, I suppose. Well, I do not suppose he intended to oppress the plaintiffs. I do not

suppose that for a moment. But I do think it was his duty to get up out of his chair, or, if he did not, to send some of his officials to these plaintiffs, and tell them that he had this letter, and that they were entitled to the possession of their property.

Now, gentlemen, I leave this case with you. You will not willingly reach the conviction that this defendant has been guilty of any malicious or wanton conduct. Nevertheless, the evidence is for your judgment. Unless you find he has, then your verdict for the plaintiff will be limited to the loss of rental value of the property during the time they were kept from its possession.

The jury then retired, and, returning, rendered a verdict in favor of the plaintiffs in the sum of $400.

Mr. Baker. I ask for a certificate of probable cause, and make the usual motion for a new trial, and to set aside the verdict as contrary to the evidence and as not warranted by the evidence, and for a stay of 60 days in which to prepare a bill of exceptions.

Certificate of probable cause granted, with 30 days' stay in which to make a bill of exceptions.